UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHIRLEY J. BARNES-GRAY, )<br>  Plaintiff, )<br>)<br>v. )<br>)<br>NORTHERN INDIANA PUBLIC )<br>SERVICE COMPANY LLC, )<br>  Defendant. ) | CAUSE NO.: 2:23-CV-325-JEM |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 34] filed on November 17, 2025. Plaintiff filed a response on January 7, 2026, and on January 30, 2026, Defendant filed a reply.

**I. Background**

On September 23, 2023, Plaintiff Shirley J. Barnes-Gray, then proceeding *pro se*, filed a Complaint for claims of employment discrimination against her employer, Northern Indiana Public Service Company LLC ("NIPSCO"). On June 13, 2024, after she retained counsel, an Amended Complaint was filed alleging Title VII (42 U.S.C. §2000(e)(5)) and 42 U.S.C. §1981 employment discrimination claims on the basis of her race and Title VII and §1981 retaliation claims.

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**II. Standard of Review**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

1

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Child.'s Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

**III.    Facts**

Northern District of Indiana Local Rule 56-1 requires the moving party to include with its

3

motion for summary judgment a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). In response, the opposing party must file a "'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed." N.D. Ind. L.R. 56-1(b)(2). In this case, as the moving party, Defendant submitted a Statement of Material Facts along with appropriate citations to supporting evidence. Plaintiff has not submitted a Statement of Genuine Disputes; therefore, the facts, as asserted by Defendant, are considered to exist without controversy for purposes of the instant Motion. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has routinely sustained "the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts").

Barnes-Gray, a Black woman, has been employed by NIPSCO since 2003. From about 2014 through April 2023, Barnes-Gray held the position of Gas Meterman, which has three classifications: A, B, and C. Barnes-Gray was a Gas Meterman A from 2016 to April 2023, after starting as a Gas Meterman C in 2014 and working her way through the C and B classifications of the role. Barnes-Gray is a member of AFL-CIO-CLC, Local Union No. 12775 ("the Union"), which has a Collective Bargaining Agreement ("CBA") with NIPSCO.

In July 2022, Barnes-Gray was involved in training a White co-worker, Crane. In August 2022, Barnes-Gray's supervisor and the Vice President of Gas Operations coordinated a meeting to address work related tensions and conflicts between Crane and Barnes-Gray. During the August 2022 meeting, Barnes-Gray did not allege that Crane had made any racially offensive statements or engaged in any racially offensive conduct. Around September 27, 2022, an employee informed

the supervisor that Crane and Barnes-Gray were continuing to argue at the workplace. NIPSCO conducted fact-finding interviews with Crane and Barnes-Gray on September 30, 2022. During her interview, Barnes-Gray reported that in early July Crane said words to the effect of: "I've eaten more chitterlings and collard greens than you [Barnes-Gray] have," and told Barnes-Gray that she should turn off music she was listening to because Barnes-Gray "should listen to Tupac and Snoop Dogg instead." Barnes-Gray also reported that Crane had called her a "bitch" but that she did not know if Crane used that slur because of her race or just as a general insult.

After the fact-finding interviews, the supervisor advised Crane that NIPSCO had found that Crane violated the Company's Employee Standards of Conduct and Code of Conduct regarding use of abusive or profane language and failure to maintain a positive work environment, suspended Crane without pay for one day, and warned her that more incidents of similar severity would result in discipline, including possible discharge. On or around October 3, 2022, the supervisor informed Barnes-Gray that NIPSCO had suspended Crane, but, consistent with NIPSCO practice of not sharing personnel information with other employees, did not provide Barnes-Gray specific information about the reason for Crane's suspension.

The CBA provides that a union member can "bump" another member, or replace them in a particular role, based on seniority. In April 2023, a Black male employee with more seniority than Barnes-Gray, bumped Barnes-Gray from her position as a Gas Meterman A in the Meter Shop. Barnes-Gray recalled being told by the Union representative that the other employee had the right to bump her under the CBA and that Barnes-Gray was bumped because the Union wanted to get the senior employee the highest rate of pay possible. Barnes-Gray testified in her deposition that she believed that NIPSCO should have considered her "unbumpable," given her belief that

5

NIPSCO "grandfathered" her in as the last A-classified Meterman a few years before when it eliminated some A-classified tasks from the Meter Shop, but she could not identify a provision of the CBA that was violated when she was bumped. Barnes-Gray herself then chose to bump a Meter Reader C, a White male with less seniority than Barnes-Gray. As a Meter Reader C, Barnes-Gray received the same rate of pay as she did as a Gas Meterman A. Barnes-Gray did not feel that she lost the respect of her co-workers following the bump.

Barnes-Gray filed an EEOC Charge of Discrimination for race discrimination on June 7, 2023. The EEOC intake interview notes state that Barnes-Gray "said she only reported the one single instance during the investigation when she reported [Crane] for making comments on ethnic food and music. No other complaints have been made." Barnes-Gray's EEOC Charge references the two comments about food and music but no other instances of alleged racial discrimination. Def. ex. p. 71 [DE 39].

In her May 19, 2025, deposition, Barnes-Gray stated that Crane made three other racially offensive remarks, but that she did not report these comments to NIPSCO because she was displeased with NIPSCO's response to the two racially offensive comments she had reported.

**IV.    Analysis**

NIPSCO moves for summary judgment on Barnes-Gray's claims for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 and § 1981. "Title VII prohibits the creation of a hostile work environment. . . In order to prevail on such a claim, a plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014) (internal quotation marks and citations omitted). To make this determination on summary

6

judgment, courts consider "the surrounding circumstances, including whether the discriminatory conduct was frequent or severe; whether the conduct was physically threatening or humiliating; and whether the conduct unreasonably interfered with her work performance. . . Title VII is not a general code of workplace civility, nor does it mandate 'admirable behavior' from employers." *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 624 (7th Cir. 2004) (citing *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). Therefore, a claim for a hostile work environment "requires proof of four elements: (1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [race] was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016). The relevant portions of 42 U.S.C. § 1981 state: "[a]ll persons with the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white persons." 42 U.S.C. § 1981(a). The analysis of a hostile work environment under § 1981 is the same analysis as for a Title VII claim. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

Title VII of the Civil Rights Act of 1964 also prohibits retaliation in employment for engaging in protected activities. To withstand a motion for summary judgment, a plaintiff must show (1) they engaged in activity protected by Title VII, (2) they suffered an adverse action taken by the defendant employer, and (3) a causal connection between the protected activity and the adverse action. *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 472 (7th Cir. 2018). To establish that an adverse action has resulted, the employee must show harm, although harm is not limited to reduced compensation. *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) ("'Federal law protects an employee only from retaliation that produces an injury,' and by themselves, these

7

threats [of unspecified disciplinary action] did not. They had no effect on [the plaintiff]'s compensation or career prospects.") (quoting *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009)). The fundamental question is "could a reasonable trier of fact infer retaliation?" *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). Retaliation claims under § 1981 are analyzed using the same standards at Title VII retaliation claims. *Yancick,* 653 F.3d at 544.

On a motion for summary judgment, a plaintiff may demonstrate a genuine issue for trial by demonstrating that "the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . race . . . or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). Accordingly, "the sole question that matters" is "[w]hether a reasonable juror could conclude that" the plaintiff would not have suffered the adverse employment action if she had a different [race], "and everything else had remained the same." *Ortiz*, 834 F.3d at 764 (citing *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994)). A plaintiff may also make a case for going to trial under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). ("[T]he well-known and oft-used McDonnell Douglas framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases."); *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010). Thus, at the summary judgment stage in this case, the proper question before the Court is whether the evidence would permit a reasonable factfinder to conclude that Barnes-Gray's

8

protected class status caused the adverse employment action. *Ortiz*, 834 F.3d at 765. The burden is on the plaintiff to demonstrate that genuine issues exist for trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003).

### A. Hostile Work Environment

NIPSCO argues that it is entitled to summary judgment on Barnes-Gray's claims for hostile work environment because Barnes-Gray cannot establish "severe or pervasive" harassment and there is no basis for employer liability because it acted promptly to punish the harasser. Barnes-Gray argues that the harassment was severe and that NIPSCO's efforts to address it were too little too late. The elements of a claim for discrimination on the basis of a hostile work environment are "(1) they were subject to unwelcome harassment; (2) the harassment was based on their race; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018) (citing *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017)). "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). "[A]n unambiguously racial epithet falls on the 'more severe' end of the spectrum." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002). "[A] supervisor's use of [a racial slur] impacts the work environment far more severely than use by co-equals." *Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631, 639 (7th Cir. 2019).

NIPSCO argues that the two reported racially offensive comments, even when combined with the use of profanity, are not severe enough to sustain a claim for a hostile work environment. Barnes-Gray argues that the comments, along with NIPSCO suspending Crane only for her use of

profanity and not addressing the racial aspects of the comments, created a hostile work environment.

The statements made by a single coworker, even assuming that they were all intended as racially-motivated insults, are insufficient to create a hostile work environment. "[I]n order to be actionable under the statute, a[n] . . . objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so," and the Supreme Court therefore "directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). To that end, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. at 788 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1998)) (quotation marks omitted). Instead, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*; *see also McKenzie*, 381 F.3d at 624 ("To establish a claim of hostile work environment, [a plaintiff] must show that she was subjected to harassment so severe or pervasive that it altered the conditions of her employment" and "demonstrate that her workplace was both subjectively and objectively hostile.") (citations omitted). A few comments from a single coworker do not rise to the level of severe or pervasive conduct.

Additionally, an "employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir. 2005) (quoting *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir.2004). The Seventh Circuit Court of Appeals "recognize[s] prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action." *Id.* (listing cases). In this case, NIPSCO investigated Barnes-Gray's complaints about the comments and took corrective action, suspending the co-worker and warning her that further instances would result in more severe discipline, even termination. Barnes-Gray did not identify any additional racially offensive comments or actions in her Amended Complaint, and she did not report the other comments described in her September 2025 deposition to NIPSCO so there was no further corrective action it could have known to take.

When the harasser is a coworker and not a supervisor, "the employer is liable only when the employee shows that [their] employer has been negligent either in discovering or remedying the harassment." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022). The employer has met its duty if it takes reasonable steps to discover and rectify discriminatory harassment. *Id.* "An employer cannot be expected to remedy harassment unless the employee informs the employer about the situation." *Glemser v. Sugar Creek Realty, LLC*, 970 F. Supp. 2d 866, 873 (C.D. Ill. 2013) (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1038 (7th Cir. 1998)). NIPSCO had a policy that prohibited discriminatory harassment of its employees and provided multiple ways to report perceived violations of the policy and took corrective action when Barnes-Gray informed it of her coworker's comments.

11

The comments by Crane do not rise to the level of creating a hostile work environment, and Plaintiff has not put forth any evidence to suggest that NIPSCO failed to address any comments that she reported. From the evidence presented, no reasonable juror could find that all the elements of a hostile work environment are met.

NIPSCO also argues that Barnes-Gray's claims for hostile work environment are time-barred, but because judgment is being entered on other grounds and the argument is not fully developed, the Court does not address these arguments.

Summary judgment is appropriate for NIPSCO on the claims of hostile work environment (Counts I and III).

B. Retaliation Claims

The methods for proving a retaliation claim are the same under both Title VII and § 1981. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007). To succeed, Barnes-Gray must show that she would not have been bumped from her position but for her protected activity. *See Adusumilli v. City of Chi.*, 164 F.3d 353, 363 (7th Cir. 1998).

"To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) that (s)he engaged in statutorily protected activity; (2) that (s)he suffered an adverse employment action; and (3) that there is a causal link between the two." *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018). "When the plaintiff establishes a prima facie case of retaliation, an employer may produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020). "If the employer meets this burden, the plaintiff, to avoid summary judgment, then must produce evidence that would permit a trier of fact

to establish, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination." *Id.*

NIPSCO acknowledges that Barnes-Gray's reporting of the racially offensive comments is a protected activity. NIPSCO argues that Barnes-Gray suffered no adverse employment action, and that, even if the CBA-permitted bump is considered an adverse employment action, there is no causal link between it and her complaint. Barnes-Gray only addresses the retaliation argument by obliquely arguing that NIPSCO's witnesses are not necessarily credible, but she does not explain how her assertions regarding their credibility apply to the retaliation claim.

Barnes-Gray did not suffer any loss of compensation, seniority, or other benefits of employment by being "bumped" by another employee and testified that she did not feel that she lost the respect of her co-workers. *Poullard*, 829 F.3d at 856 ("Federal law protects an employee only from retaliation that produces an injury."). Barnes-Gray has not identified an actionable adverse employment action. Summary judgment in NIPSCO's favor on Barnes-Gray's retaliation claims (Counts II and IV) is therefore proper.

C. Request to Strike

Within its reply brief, NIPSCO requests that the Court strike the Affidavit of Barnes-Gray attached to her response because it is unsigned. Barnes-Gray has not corrected this oversight.

Federal Rule of Civil Procedure 56(c)(4), requires "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. 56(c)(4). Pursuant to 28 U.S.C. § 1746, any unsworn declaration executed in the United States, including an affidavit, must include a statement that the declarant's written

13

statement is subscribed by him, true under penalty of perjury, and the date of execution. Both of those rules assume that the declaration bears an actual signature.

Northern District of Indiana Local Rule 7-1 requires that motions be filed separately, and not as part of reply brief. NIPSCO failed to file a separate motion to strike. In addition, although the affidavit was not signed, the Court declines to strike it because even with the facts set forth therein, Barnes-Gray cannot meet her burden on the instant Motion,

## VI. Conclusion

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment [DE 34] and **ORDERS** that judgment is entered in favor of Defendant on Plaintiff's Amended Complaint.

SO ORDERED this 3rd day of March, 2026.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record